PLUS COMPUTING MACHINES, INC. *v.* UNITED STATES (No. 4893) [1]

---

[1] C. A. D. 655.

United States Court of Customs and Patent Appeals, May 7, 1957

*Allerton deC. Tompkins* for appellant.

*George Cochran Doub*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.

*John D. Rode amicus curiae.*

[Oral argument April 3, 1957, by Mr. Tompkins and Mr. FitzGibbon]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, C. D. 1785, overruling the importer's protest and sustaining the collector's classification of the merchandise here involved, consisting of certain calculating machines, as machines not specially provided.for dutiable at 15 per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. The importer claimed classification under the same paragraph, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 265, T. D. 52763, as calculating machines specially constructed for multiplying and dividing dutiable at 12½ per centum ad valorem.

Paragraph 372, as modified by T. D. 51802, under which the machines were classified by the collector, reads:

Machines, finished or unfinished, not specially provided for:

\*    \*    \*    \*    \*    \*    \*

Other (except wrapping and packaging machines; food grinding or cutting machines; machines for determining the strength of materials or articles in tension, compression, torsion or shear; machines for making paper pulp or paper; machines for manufacturing chocolate or confectionery; and internal-combustion engines)------------------------------------------------------------15% ad val.

Paragraph 372, as modified by T. D. 52739, under which the importer claimed the machines should have been classified and assessed with duty, reads:

Machines, finished or unfinished, not specially provided for:
Calculating machines specially constructed for multiplying and dividing------------------------------------------------------------12½% ad val.

The issue here is thus defined at the outset in the brief of counsel for the Government:

The question presented is one of both law and fact. The question of law is, What is meant by the expression "specially constructed for multiplying and dividing"?, and the question of fact is, Are the machines herein as a matter of fact specially constructed for multiplying and dividing?

The case was submitted to the trial court not only on the testimony of six witnesses, three of whom were called by each of the respective parties, but also on Exhibits 1 to 10, inclusive, which were introduced into evidence by the importer, and Exhibit A which was received in evidence in support of the Government's position. Certain other exhibits were received by the Customs Court for the purpose of identification only, as thus indicated in its decision:

Exhibit 1, representing imported model 909; Exhibit 2, the same as exhibit 1, disassembled so as to expose its operating parts; Illustrative exhibit 3, Monroe rotary-type calculating machine; Illustrative exhibit 4, adding listing machine; Illustrative exhibit 5, half keyboard machine; Illustrative exhibit 6, photograph of Millionaire calculating machine; Illustrative exhibit 7, photograph of "Mercedes" Euklid calculating machine; Illustrative exhibits 8, 9, and 10, parts of imported machine; Exhibit 13, page 6 of "U. S. Government Price List" for Monroe calculating, adding, and bookkeeping machines, insofar as it represents a photograph of the model L 200–X machine; Collective exhibit 11, exhibit 12, and collective exhibit 14 were marked for identification only. Defendant introduced exhibit A, pamphlet circulated by plaintiff corporation.

The respective exhibits represent the type of machines employed by diversified branches of commerce and industry as suitable to perform the class and amount of work required in the conduct of their business.

The Customs Court in its decision made the important observation that during the trial "It was not disputed by the witnesses that exhibit 1, representing the importation, and exhibit 3, the Monroe rotary type of machine, are calculating machines; that exhibit 3 is specially constructed for multiplying and dividing; and that both of those machines can be used to add and subtract." Furthermore, it was not disputed there that the importer's Exhibit 1 contains the following features. It is manually actuated and has a keyboard comprising nine columns of nine keys each, with the keys in each column bearing the digits from 1 to 9, respectively. The digits in the right-hand column represent units, those in the second column tens, those in the third, hundreds, and so on. Addition is effected by

successively depressing the keys corresponding to the numbers to be added.

The Exhibit 1 machine does not subtract directly, but by a method as addition of complements, comprising adding the complement of the number to be subtracted to the number from which the subtraction is to be made. The complement of a number, as clearly defined and illustrated in the decision of the Customs Court, is "the numerical amount that must be added to the number to give the least number containing one more digit; as, the complement of 4 is 6, and that of 45 is 55."

The Customs Court further stated that—

"The calculation of subtraction can be performed on an adding machine by adding the number's complement and striking off the added digit. We give the following as an illustration:

*Problem*

Subtract 3 from 9.

*Solution*

The complement of 3 is 7.

Add 7 to 9—16.

Remove the added digit 1, leaving 6."

The operations hereinbefore described require the operator to supply the complements of numbers at appropriate times. That process is facilitated by marking each key not only with a large digit, to be used in adding, but also with a small digit to be used in subtracting.

Multiplication is performed on Exhibit 1 by a rapid process of repeated addition.

Exhibit 1 is used for dividing by a process of repeated subtraction, which it is not necessary to consider here in detail, but which corresponds generally to the process of repeated addition. It is to be noted, however, that the subtractions are actually performed by addition of complements in the manner hereinbefore discussed.

From the foregoing it is evident that, mechanically, the Exhibit 1 machine does nothing but add and that subtraction, multiplication and division are performed on the machine by selecting the numbers to be added and the number of additions to be made. Such selection requires substantial skill and training on the part of the operator of the machine. However, while the basic operation of Exhibit 1 is limited to addition, the record shows that the construction of the machine is definitely modified in several ways in order to permit it to carry out quickly and accurately the particular type of addition that is involved when the machine is used for multiplication or division. The importer's witness, Henry R. Mathieu, testified in detail that Exhibit 1 contains certain parts which would not be included if the machine were not intended for use in multiplying and dividing, and that other parts of the machine would be constructed in a different

manner if it were not to be used for those purposes. His testimony in that respect is summed up in the following statement "* * * we put into this Exhibit 1 certain parts and we changed the design of other parts specifically to allow it to multiply and divide efficiently. We wouldn't have to put in those parts or design them in that way in the machine if it had only to add and subtract."

The portion of Mathieu's testimony above quoted is amply supported by other evidence in the record. The Government's witnesses, Ridgely D. Bryan and Carl A. Zeller, stated that Exhibit 1 contained features which facilitated the operations of multiplication and division. Thus Bryan testified as follows:

Q. In your opinion is Exhibit 1 specially constructed to multiply and divide? A. In a manner, yes.

&ast;       &ast;       &ast;       &ast;       &ast;       &ast;       &ast;

Q. Is it the operator or is it the machine? A. I am talking about special construction of the machine. A. It is a combination of the two. The machine has a very fast key depression and in the hands of an expert operator they can make it go rapidly, so I would say it was specially constructed.

&ast;       &ast;       &ast;       &ast;       &ast;       &ast;       &ast;

While Bryan later testified that he did not consider that Exhibit 1 was specially constructed to multiply and divide, he did not deny that it contained structural features facilitating those operations, but merely indicated that he considered such features to be "minor details."

Similarly, Zeller testified:

Q. Are there certain features on that Exhibit 1 which permit or facilitate multiplication and division? A. Yes, by the use of duplex.

&ast;       &ast;       &ast;       &ast;       &ast;       &ast;       &ast;

The testimony of record may be summarized to the effect that while the construction of Exhibit 1 is basically that of an adding machine, it contains substantial features which enable it to be used in multiplying and dividing quickly and accurately. The testimony also shows that machines of that type are commonly sold to purchasers who require machines to multiply and divide, and that they are extensively used to perform those operations.

The plaintiff's witness Edgar Noll, an independent distributor of adding and calculating machines, stated that machines of the Exhibit 1 type were rented or sold only to persons whose work primarily required multiplication and division. Those whose work required an adding operation only would use a cheaper machine.

For purposes of comparison, machines of several other types were introduced, two of which, Exhibits 3 and 5, require consideration.

Exhibit 3 is a manually operated machine of the rotary type, also referred to as a Monroe machine. It includes a keyboard, upper and lower dials, an operating crank and a shiftable carriage. In using it for multiplication, the multiplicand is set up on the keyboard and

the multiplier on the upper dial. The crank is then moved forwardly a number of times corresponding to the last digit of the multiplier, which has the effect of adding the multiplicand to itself that number of times or, in other words, multiplying it by that number. The carriage is then shifted to the tens position and the handle is moved forwardly a number of times corresponding to the next to the last digit of the multiplier, and so on. At the conclusion of the operation, the product appears on the lower dial, the multiplier remains on the upper dial and the multiplicand remains on the keyboard, so that the machine retains an indication of the entire calculation. That is not true of the Exhibit 1 machine, in which there is no indication, when the operation is concluded, as to what the numbers being multiplied were.

Multiplication on Exhibit 3 is a process of repeated addition, but is performed by moving a crank rather than by repeatedly depressing keys as in Exhibit 1.

Exhibit 3 is used to divide by a process of repeated subtraction similar to the repeated addition used in multiplication with the crank being moved backward instead of forward. Subtraction on this machine is performed directly rather than by the addition of complements as in Exhibit 1. Exhibit 3 may also be used for addition and substraction although there is evidence to the effect that it is not so efficient for those purposes as a keyboard machine such as Exhibit 1.

It is agreed by all parties that Exhibit 3 is a calculating machine "specially constructed for multiplying and dividing" within the meaning of paragraph 372.

Exhibit 5 was submitted in evidence as a so-called half-keyboard machine which contains on its keyboard only the digits from 1 to 5 inclusive. The numbers 6, 7, 8 and 9 are introduced into the machine by simultaneously pressing keys corresponding to numbers adding up to the required total. Thus, 9 would be put into the machine by striking the 4 and 5 keys. While it is said to be possible to use Exhibit 5 to a limited extent for multiplication and division, that cannot be done commercially and it is agreed that the machine is not specially constructed for those purposes.

In our opinion, the record establishes the following facts:

1. Exhibit 1, the imported machine, is basically a rapid adding machine, but includes a number of structural features which are not necessary for addition or subtraction but which greatly facilitate multiplication and division.

2. The features last referred to render the machine substantially more expensive, so that it would rarely, if ever be rented or purchased by anyone who did not intend to use it, to some extent at least, for multiplication and/or division. There is no clear evidence as to what proportion of the work normally done

by individual machines of the Exhibit 1 type consists of multiplication or division, as compared with addition or subtraction.

3. Exhibit 1 is especially adapted for rapid multiplication and division of numbers containing a comparatively small number of digits and is recommended for such use in preference to a machine such as Exhibit 3. For multiplication or division of larger numbers, Exhibit 3 is preferable since its use does not require simultaneous depression of a key for each digit.

4. Exhibit 1 is better adapted for addition and subtraction than Exhibit 3.

5. Exhibit 3 is preferable to Exhibit 1 for multiplication and division in that it retains the factors on the keyboard at the end of a computation, for checking, and also in that it requires less training on the part of an operator.

From the foregoing it appears that the difference between Exhibits 1 and 3 is one of degree rather than kind. Both machines will perform the four functions of addition, subtraction, multiplication and division and although, in practice, a higher percentage of the work done by Exhibit 3 may be multiplication or division, neither machine would ordinarily be acquired by anyone who did not need to multiply or divide.

It is evident that Exhibit 1 is a calculating machine which can be and is used for multiplying and dividing. The further question to be considered, therefore, is whether the machine is "specially constructed" for those purposes within the meaning of paragraph 372. On that point the opinions of the witnesses for the importer and for the Government were in conflict, the former testifying that the machine was so specially constructed and the latter that it was not.

The Customs Court found that the language in question was "so shrouded in doubt as to permit us to resort to extraneous aids for possible enlightenment," and accordingly relied on the following statement in the Digest of Trade Data relating to the trade agreement with Sweden, entered into in 1935 (68 Treas. Dec. 19, T. D. 47785), in which such language first appeared:

> The calculated [sic] machines affected by reclassification are confined to those constructed essentially for multiplying and dividing. Such machines *can be* used to add or subtract, *although these operations are usually more readily performed on adding machines.*
>
> \*      \*      \*      \*      \*      \*      \*
>
> *Adding machines are not included under the new classifications* for the reason that *although many of them are capable of being used for multiplying and dividing,* they are *not constructed essentially for the performance of these operations.* [Italics supplied.]

Apparently relying to a considerable extent on "extraneous aids" the Customs Court concluded that Exhibit 1 "was not the type of

machine which the trade negotiators had in mind as a calculating machine specially constructed for multiplying and dividing."

Since there can be no dispute here as to what is meant by "constructed," this case turns upon the meaning of the word "specially," which is the adverb of "special," and which has been defined as follows:

*Webster's New International Dictionary* (1949):
Special (1) Distinguished by some unusual quality * * *.
(6) Additional to the regular * * *.
(7) Confined to a definite field of action; designed or selected for a particular purpose * * *.

*Funk and Wagnalls New Standard Dictionary* (1925):
Special . . . . (2) Designed for or assigned to a specific purpose; performing or pertaining to a distinct function or duty, and so distinguished from others of the same general class * * *.

Some of the definitions thus quoted might appear to admit of the interpretation that a machine specially constructed to multiply and divide is only one which could perform no other functions. Such an interpretation, however, is clearly inadmissible here since the record indicates that practically all machines which can be used to multiply and divide can also be used to add and subtract, although the latter use, in some cases, may be too slow for commercial purposes. Moreover, it is agreed by all parties that Exhibit 3 is specially constructed for multiplying and dividing, despite the fact that it will also add and subtract.

As above defined, the only remaining meaning of "special" which could reasonably apply here in the interpretation of the term "specially constructed for multiplying and dividing," is a machine "designed for * * * a specific purpose." That meaning, in our opinion, is satisfied by the Exhibit 1 machine which includes a number of structural features serving the specific purpose of enabling it to multiply and divide efficiently and incorporated in it solely for that purpose. Such a machine is clearly distinct from one which was designed for no purpose other than addition and subtraction.

In ordinary usage the statement that an article is specially constructed for a particular purpose means merely that it includes particular features which adapt it for that purpose. The purpose in question need not be the sole one served by the article and may not even be the principal one. Thus snow-tread tires are specially constructed for driving in snow even though, in practice, they may seldom be used for that purpose; and armored trucks are specially constructed to give protection against bullets, even though they may never be fired upon.

We are of the opinion that the imported machines under consideration were specially constructed for multiplying and dividing.

While the statutory language here to be construed does not appear to be so ambiguous as to require resort to extrinsic aids in interpreting it, the conclusion above reached is not inconsistent with the cited quotation from the Digest of Trade Data relied on by the Customs Court, and indicating that the machines therein referred to must be "constructed essentially for multiplying and dividing." The record shows that Exhibit 1 machines are sold only to purchasers who desire to use them for multiplying and dividing, even though they may also use them for adding and subtracting. The performance of multiplication and division, therefore, is an essential function of the machine.

It is argued by the Government that since it is necessary to use the system of complements when using Exhibit 1 for division, the machine does not actually divide. However, none of the machines described in the record can carry out division or multiplication without the performance of certain selective steps by the operator. Accordingly, while the operation of Exhibit 1 may require somewhat more thought and training than that of Exhibit 3, we think that both machines may be properly said to multiply and divide.

Extensive quotations are made in the Government's brief from the articles on calculating machines published in the New International Encyclopedia and the Encyclopedia Britannica. However, while those articles clearly recognize a distinction between simple adding machines on one hand and multiplying and dividing machines on the other, they contain nothing to indicate that a machine such as Exhibit 1, which provides definite multiplying and dividing features, is not specially constructed for multiplying and dividing.

We are of the opinion therefore that the imported machines here involved are specially constructed for multiplying and dividing within the meaning of paragraph 372 of the Tariff Act of 1930 as modified, *supra*. Accordingly, the importer's protest should have been sustained and the machines held dutiable at 12½ per centum ad valorem. The judgment of the United States Customs Court is *reversed*.

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.